NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CROWN ASSET MANAGEMENT LLC, *Plaintiff/Appellee*,

*v.*

JULIA CIULLA, *Defendant/Appellant*.

No. 1 CA-CV 25-0455

FILED 02-17-2026

Appeal from the Superior Court in Maricopa County
No. CV2021-010077
The Honorable John R. Hannah Jr., Judge (*Retired*)

**AFFIRMED**

COUNSEL

Faber and Brand L.L.C., Columbia, MO
By James Joseph Eufinger
*Counsel for Plaintiff/Appellee*

Law Office of Richard Groves, Phoenix, AZ
By Richard N. Groves
*Counsel for Defendant/Appellant*

## MEMORANDUM DECISION

Presiding Judge Daniel J. Kiley delivered the decision of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

**K I L E Y**, Judge:

**¶1**         Julia Ciulla opened a revolving credit account with Citibank, N.A. ("Citibank"), used her Citibank credit card, and then failed to pay the debt she incurred.[1] Crown Asset Management, LLC ("Crown Asset"), which acquired Citibank's rights to the debt, sued Ciulla. After a bench trial, the superior court awarded damages to Crown Asset.  We affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**         Crown Asset, a passive debt buyer, sued Ciulla for breach of contract and "account stated" relating to the revolving credit account she opened with Citibank. Crown Asset alleged that Ciulla incurred a debt of over $55,000 to Citibank and that Crown Asset acquired Citibank's rights to the debt through a sale and assignment.

**¶3**         At a bench trial, Crown Asset offered testimony from custodians of records for both Citibank and Crown Asset to authenticate documentary evidence establishing its claim, including Citibank's cardholder agreement, monthly billing statements addressed to Ciulla, and documents showing Crown Asset's acquisition from Citibank of its right to collect the debt from Ciulla. Ciulla objected to the witnesses' testimony on grounds of lack of foundation and hearsay. The superior court overruled Ciulla's objections, finding the witnesses had personal knowledge sufficient for them to authenticate the exhibits under Arizona Rule of Evidence ("Rule") 901(a).  The court also found the witnesses were qualified to testify as to the prerequisites for admission of the records under Rule 803(6).  The court admitted the exhibits in evidence and found that Crown Asset proved by a preponderance of the evidence each of the elements of

---

[1] We view the facts in the light most favorable to sustaining the judgment. *Ariz. Biltmore Hotel Villas Condos. Ass'n v. Conlon Grp. Ariz., LLC*, 249 Ariz. 326, 329, ¶ 3  (App. 2020).

its breach of contract and "account stated" causes of action. The court entered final judgment and denied Ciulla's motion for new trial.

**¶4**         We have jurisdiction over Ciulla's timely appeal under A.R.S. § 12-2101(A)(1) and (A)(5)(a).

## DISCUSSION

**¶5**         Ciulla argues that the superior court erred in admitting the documents offered by Crown Asset to prove its claim. Ciulla asserts the trial witnesses were not competent to authenticate the exhibits because they did not have personal knowledge of the "mode of [their] creation." She also asserts that the documents were inadmissible hearsay. We review the superior court's evidentiary rulings for abuse of discretion. *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

**¶6**         Arizona Rule of Evidence ("Rule") 602 requires witnesses to have personal knowledge of the matters about which they testify. Ariz. R. Evid. 602. Under Rule 901, the party offering an item of evidence must "produce evidence sufficient to support a finding that the item is what the proponent claims it is[,]" which may be accomplished through the testimony of a witness with "knowledge" that the "item is what it is claimed to be." Ariz. R. Evid. 901(a)-(b)(1). Alternatively, an item may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Ariz. R. Evid. 901(a)-(b)(1). The admissibility of evidence under Rule 901 does not depend on a determination that the evidence is in fact authentic, "but only whether evidence exists from which the [factfinder] could reasonably conclude that it is authentic." *State v. Lavers*, 168 Ariz. 376, 386 (1991). The burden of establishing authenticity under Rule 901, in other words, is "not high." *D.G. by and through Goan v. Alpine Union Sch. Dist.*, Case No. 24-cv-0220-BAS-MSB, 2025 WL 2308872 at *2 (S.D. Cal. July 25, 2025) (citation omitted).[2] And contrary to Ciulla's suggestion, neither Rule 602 nor Rule 901 require the witness authenticating an exhibit to have personal knowledge of the "mode" of its "creation." *See, e.g.*, *HDT Bio Corp. v. Emcure Pharmaceuticals, Ltd.*, Case No. C22-0334JLR, 2022 WL 3018239 at *5 (W.D. Wash. July 29, 2022) (holding that "personal knowledge[,]" for purposes of the federal counterpart to Rule 602, "can

---

[2] When interpreting an evidentiary rule that "largely mirrors" its counterpart in the Federal Rules of Evidence, Arizona courts "look to the federal rule and its interpretation by federal courts for guidance." *Phillips v. O'Neil*, 243 Ariz. 299, 302, ¶ 13 (2017).

come from review of the contents of file and records[,]" and so "a witness who has reviewed records may testify to acts that she or he did not personally observe but which are described in the record." (citation modified)); *Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1052 (holding that the federal counterpart to Rule 901 "does not require personal knowledge of a document's creation, but rather only personal knowledge that a document was part of an official file").

¶7            Rule 803(6) provides that a record of an event is generally admissible if the testimony of the custodian or other qualified witness establishes that (1) the record was made nearly contemporaneously with the underlying event by or from information transmitted by someone with knowledge, (2) the record was kept in the course of regularly conducted business activity, and (3) "making the record was a regular practice of that activity[.]" Ariz. R. Evid. 803(6)(A)-(D). A document that satisfies those requirements may nonetheless be inadmissible if the opposing party "show[s] that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Ariz. R. Evid. 803(6)(E).

¶8            "Neither the person who witnessed the matters recorded nor the person who created the record are necessary foundational witnesses" for admission of documents under Rule 803(6). *Premier Consulting & Mgmt. Sols., LLC v. Peace Releaf Ctr. I*, 257 Ariz. 80, 90, ¶ 42 (App. 2024) (quoting 1 Arizona Practice, Law of Evidence § 803:7 (4th ed.)); *see also Wells Fargo Bank NA v. Terrenate Enterprises Inc*, 1 CA-CV 19-0081, 2020 WL 2730781 at *12, ¶ 61 (Ariz. App. May 26, 2020) (mem. decision) ("To lay adequate foundation under [Rule 803(6)], the testifying witness need not have personal knowledge of the creation of the document."). On the contrary, "courts regularly admit business records even when the testifying witness did not assemble the complete record." *State v. Parker*, 231 Ariz. 391, 401, ¶ 33 (2013) (citing with approval *United States v. Langford*, 647 F.3d 1309, 1326-27 (11th Cir. 2011), which found that the proponent of bank records properly laid foundation for admission through its proffered custodial witness despite the witness "not hav[ing] personal knowledge of each of the records[.]").

¶9            Here, the superior court found the witnesses

> had personal knowledge sufficient to enable them to recognize the credit card agreement, the billing statements and the bill of sale as authentic records of Citibank and Crown Asset Management. The witnesses' categorical familiarity with the documents was clear from the details of their testimony.

4

¶10        The court further found that Crown Asset "laid sufficient foundation for admission of the records over a hearsay objection" because the custodians "were personally familiar with, and able to explain in detail, the record-keeping systems of their respective organizations and how those systems were used to create the records that the plaintiff introduced in evidence." The court found them qualified to testify to the prerequisites for admission of records under Rule 803(6) because "their testimony demonstrated the reliance of their organizations on the accuracy and trustworthiness of the record-keeping systems they described."

¶11        The record supports the court's findings. The custodian of records for Citibank reviewed Ciulla's monthly credit card statements. She explained how these documents are created from transaction information electronically transmitted to Citibank by merchants at the point of sale and then compiled into a statement at the end of each billing cycle, which is sent via United States mail to the customer at the address the customer provided. She explained that this procedure is "as a regular practice" of Citibank's, that the information is retained "in the regular course of [Citibank's] business[,]" and that she has "personal knowledge of how the transactions appear and get to the statements." The custodian identified an exemplar of Citibank's cardholder agreement and reviewed the notification letter Citibank sent to Ciulla stating her account had been sold and was no longer owned by Citibank. She also reviewed the bill of sale and assignment between Citibank and Crown Asset reflecting that Ciulla's debt was sold by the former to the latter. The custodian testified that these documents, too, were created at or near the time of the underlying events as part of a regular practice and kept in the regular course of Citibank's business. The custodian thus testified in the affirmative as to each of the Rule 803(6) elements for all of the Citibank documents.

¶12        The custodian of records for Crown Asset testified that the bill of sale and assignment of Ciulla's account was signed by Crown Asset's chief executive officer and included data about Ciulla's account that was provided by Citibank. She testified in the affirmative as to each of the Rule 803(6) elements for the bill of sale and assignment. She further testified that Crown Asset received the statements and other data from Citibank electronically, that it "does not have the ability to manipulate any of [the] data" that Citibank transmitted electronically, and that it relied on the data obtained from Citibank in its "work in trying to collect the accounts[.]"

¶13        Ciulla did not show, or even allege, that the source of the information contained in the documents, or the method of the documents' preparation, was untrustworthy. Ariz. R. Evid. 803(6)(E).

¶14        Based on this record, the superior court did not abuse its discretion in finding the witnesses had sufficient personal knowledge under Rule 602 to enable them to authenticate Citibank's agreement, Ciulla's billing statements, and the bill of sale of Ciulla's debt from Citibank to Crown Asset. The same testimony supports the court's finding under Rule 901(a) that the records are what Crown Asset claimed they were and that Crown Asset satisfied admissibility requirements for the exhibits. Ariz. R. Evid. 901(b)(1). Likewise, the court did not abuse its discretion in admitting the records under the business records exception to the hearsay rule. *See Cont'l Tel. Co. of the West v. Blazzard*, 149 Ariz. 1, 5 (App. 1986) (holding that testimony about how the documents were prepared and maintained by company's predecessor established sufficient foundation for admission of business records).

## CONCLUSION

¶15        For the foregoing reasons, we affirm the superior court's judgment. Because she is not the successful party, we deny Ciulla's request for attorney fees. We award costs to Crown Asset upon compliance with Arizona Rule of Civil Appellate Procedure 21.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:       JR